## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THE HANOVER AMERICAN** | * | **CIVIL ACTION NO.:** |
| **INSURANCE COMPANY,** | * | |
| **Plaintiff,** | * | |
| **vs.** | * | |
| | * | **JUDGE:** |
| **EDUARDO JENKINS LANDSCAPE** | * | |
| **ARCHITECT & PLANNER, LLC,** | * | |
| **EDUARDO JENKINS, WILLIAM** | * | |
| **THOMAS FORLANDER, JO ANN** | * | **MAGISTRATE JUDGE:** |
| **FORLANDER** | * | |
| **Defendants.** | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, The Hanover American Insurance Company ("Hanover"), hereby files the instant Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure against defendants, Eduardo Jenkins Landscape & Planner, LLC, Eduardo Jenkins, William Thomas Forlander, and Jo Ann Forlander for the purpose of determining a question of actual, immediate controversy between the parties.  In support thereof, Hanover states as follows:

## PARTIES

1.      Plaintiff, Hanover, is a corporation domiciled in New Hampshire with its principal place of business in Massachusetts.  Pursuant to 28 U.S.C. 1332(c), a corporation shall be deemed to be a citizen of the state of its incorporation and the state where it has its principal place of business. Thus, Hanover is a citizen of New Hampshire and Massachusetts.

2.     Defendant, Eduardo Jenkins, is a natural person of the full age of majority and domiciled in the Parish of East Baton Rouge, Louisiana. His address is 1119 North Boulevard, Baton Rouge, Louisiana 70802.

3.     Defendant, Eduardo Jenkins Landscape Architect & Planner, LLC, is a Louisiana Limited Liability company. "[T]he citizenship of a[n] LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). According to the Louisiana Secretary of State's records, Eduardo Jenkins Landscape Architect & Planner, LLC has one member/manager, Eduardo Jenkins.[1] The registered agent of Eduardo Jenkins Landscape Architect & Planner, LLC is Eduardo Jenkins, 1119 North Blvd., Baton Rouge, Louisiana 70802.[2]

4.     Defendant, William Thomas Forlander, is a natural person of the full age of majority domiciled in Lafayette Parish, Louisiana, whose address is 120 Avallach Drive, Lafayette, Louisiana 70503.

5.     Defendant, Jo Ann Forlander, is a natural person of the full age of majority domiciled in Lafayette Parish, Louisiana, whose address is 120 Avallach Drive, Lafayette, Louisiana 70503.

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest, attorney's fees and costs.[3]

---

[1] Exhibit A, printout from Louisiana Secretary of State regarding Eduardo Jenkins Landscape Architect & Planner, LLC.
[2] *Id.*
[3] Exhibit B, Forlanders' "Responses to Interrogatories," dated December 22, 2020, (*see,* specifically, the Forlanders' Answers to Interrogatory No. 12).

7.     Venue is proper in the United States District Court for the Western District of Louisiana pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district where defendants William Thomas Forlander and Jo Ann Forlander reside, and all defendants are residents of Louisiana.

## NATURE OF THE CLAIM

8.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure to determine an actual case and controversy between the parties regarding the parties' respective rights and obligations under certain business owners insurance policies issued by Hanover to defendant, Eduardo Jenkins Landscape Architect & Planner, LLC, identified as the named insured, and bearing Policy No. OZO-D328948-00 with a policy period of July 30, 2017 to July 30, 2018, and Policy No. OZO-D328948-01 with a policy period of July 30, 2018 to July 30, 2019 (collectively the "Policies").[4]

9.     Hanover seeks a judgment declaring that it has no duty to provide coverage, and no duty to defend or indemnify Eduardo Jenkins Landscape & Planner, LLC and Eduardo Jenkins (collectively "Jenkins") under the Policy with respect to the claims asserted against Jenkins in the underlying state court litigation, *William Thomas Forlander and Jo Ann Forlander v. Eduardo Jenkins Landscape Architect & Planner, LLC, and Eduardo Jenkins*, No. C-682337, Division 25, 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana ("Underlying Lawsuit").[5]

## BACKGROUND

10.     On or about May 1, 2019, William Thomas Forlander and Jo Ann Forlander ("the

---

[4] Exhibit C (*in globo*), the Policies, Bates Nos. HAN 000001-000445. Notably, the Policies also provide umbrella liability coverage, which are not at issue, as the Forlanders' claims appear to be well within the limits of the primary Hanover GL Policies' $1,000,000 per-occurrence limits.
[5] Exhibit D, Forlanders' Petition for Damages.

Forlanders") commenced the Underlying Lawsuit by filing a Petition for Damages ("the Forlanders' Petition" or "the Underlying Lawsuit") against Jenkins.

11.     In the Underlying Lawsuit, the Forlanders alleged that they hired Jenkins to design plans for an outdoor kitchen, gazebo, pool, entertainment area, and related infrastructure and landscaping in their home's backyard.[6]

12.     The Forlanders' Petition further alleged that after receiving the plans, they eventually hired Jenkins to install the design.[7]  Specifically, the Forlanders alleged that they hired Jenkins to install pool decking, the outdoor kitchen, the gazebo, landscaping, "and other portions of the project,"[8] (the "Backyard Project") for which the Forlanders allegedly paid Jenkins more than $237,000 to complete.[9] The Forlanders' discovery responses also allege that they made payments in the total sum of $172,992.43 "to complete and/or correct or replace Jenkins' or subcontractors' deficient work," and that they are "entitled to recover the extra costs expended to correct this deficient work."[10]   As such, the matter in controversy here exceeds the sum of $75,000.00, exclusive of interest, attorney's fees and costs.

13.     The Forlanders' Petition asserts that they contracted with Jenkins on December 26, 2017, to begin the Backyard Project, at which time Jenkins estimated that the project would take three months to complete; however, as of August 28, 2018, the Backyard Project remained "almost wholly incomplete," such that Forlanders believed that the "delay had become a 'crisis.'"[11]

14.     The Forlanders alleged that Jenkins ultimately **"failed to complete any component of the installation,"** and that the Forlanders were forced to hire a new contractor to install the

---

[6] Exhibit D, Forlanders' Petition, ¶¶1–5.
[7] *Id.* at ¶ 6.
[8] *Id.* at ¶ 8.
[9] *Id.*  at ¶ 8.
[10] Exhibit B, Forlanders' "Responses to Interrogatories," dated December 22, 2020, (*see,* specifically, the Forlanders' Answers to Interrogatory No. 12).
[11] *Id.* at ¶¶ 6–10.

design.[12] The Forlanders additionally asserted that, aside from failing to complete the work, Jenkins failed to provide many of the items included in the installation contract for which the Forlanders had already paid Jenkins, including but not limited to plants and trees, landscape lighting fixtures and connections, electrical fixtures in the outdoor kitchen, granite for the kitchen counters and posts, and the kitchen backsplash.[13]

15.    The Forlanders additionally alleged that the work Jenkins did perform was improper and/or deficient in a number of ways, including in the following respects: the electrical, plumbing, and gas lines in the outdoor kitchen were not installed to align with appliances; the back wall decking of the kitchen was improperly installed; the post decking wrap was improperly installed; the electrical conduit for the landscaping had to be removed and replaced; the wood arbor was installed improperly and in the incorrect dimensions and had to be replaced; the cobblestone walk was improperly paved; the landscaping drainage was improperly installed; and Jenkins failed to comply with applicable building codes and standards for proper installation and testing/inspection.[14] The Forlanders assert that, as a result, Jenkins breached their obligations by failing to perform the work in a good and workmanlike manner, by failing to complete the work timely or at all, and by failing to supply materials, fixtures, landscaping, and other items, which they contend, have resulted in physical damage to their backyard project, and that the Forlanders have incurred and continue to incur costs for inspections, repairs, and completion of the installation.[15] The Forlanders additionally allege they are entitled to a return of some or all of the money they paid to Jenkins for services not rendered and materials not supplies.[16]

---

[12] *Id.* at ¶ 10. (Emphasis added). The Petition for Damages is vague as to when Jenkins ceased work on the Forlanders' backyard project, but is clear that it occurred sometime after August 28, 2018. *Id.* at ¶ 10.
[13] *Id.* at ¶ 11.
[14] *Id.* at ¶ 12.
[15] *Id.* at ¶ 18.
[16] *Id.* at ¶ 18.

16.     The Forlanders' Petition makes no allegations concerning any physical property damage sustained subsequent to Jenkins ceasing work on their Backyard Project, nor do the Forlanders assert any claims for resultant damage to property beyond the work Jenkins performed.

17.     In a letter dated May 31, 2019, Jenkins submitted a claim to Hanover related to the allegations contained in the Forlanders' Petition.[17]

18.     Pursuant to a complete reservation of rights, Hanover is currently defending Jenkins against the Forlanders' claims in the Underlying Lawsuit.[18]

19.     With respect to their physical property damage allegations, the Forlanders' discovery responses assert only claims for damage to the work performed by Jenkins that were sustained at the time of Jenkins' installation of same.[19]

## THE POLICIES

20.     Hanover issued two business owners insurance policies to defendant, Eduardo Jenkins Landscape Architect & Planner, LLC, identified as the named insured, bearing Policy No. OZO-D328948-00 with a policy period of July 30, 2017 to July 30, 2018, and Policy No. OZO-D328948-01 with a policy period of July 30, 2018 to July 30, 2019 (collectively the "Policies").[20]

21.     The Policies' Section II – Liability, as modified by the Louisiana Changes form, provides in pertinent part:

> A.    Coverages
>    1.    Business Liability
>       a.    We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage, or "personal and advertising injury" to which this insurance applies.

---

[17] Exhibit E.
[18] Exhibit F, Reservation of Rights letter.
[19] Exhibit B, Forlanders' "Responses to Interrogatories," Exhibit G, Forlanders' "Responses to Requests for Production of Documents;" Exhibit H, Forlanders' "Responses to Requests for Admission;" and Exhibit I, report of Marc LeBlanc produced by the Forlanders with their discovery responses.
[20] Exhibit C.

We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury", to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D -** Liability and Medical Expenses Limits of Insurance[21]; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments, settlements, or medical expenses. However, using up the Medical Expense Limit does not end our right and duty to defend.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under f. Coverage Extension – Supplementary Payments.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under **C. Who Is An Insured**, paragraph **1.** And no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized

---

[21] Policy No. OZO-D328948-01, effective from July 30, 2018, until July 30, 2019, provides an identical provision except that "Paragraph **D -** Liability and Medical Expenses Limits of Insurance" is replaced by "**SECTION II – LIABILITY, D. Liability and Medical Expenses Limits of Insurance.**" Exhibit C, Bates Nos. HAN 000103, 000129, 000327, 000353.

"employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**(2)**     To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

**c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under **C. Who Is An Insured**, paragraph **1.** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.[22]

22.     In both Policies, the terms "you" and "your" refer to the "named insured" shown in the Declarations, Eduardo Jenkins Landscape Architect & Planner, LLC.[23]

23.     The Policies additionally provide that, with respect to a limited liability company, the named insured's members are insureds, but only with respect to the conduct of the named insured's business.  The named insured's managers are also insureds, but only with respect to their duties as the named insured's managers.[24]

24.     The Policies define occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[25]

25.     The Policies define "products-completed operations hazard" as:

---

[22] Exhibit C, Bates Nos. HAN 000103-104, 000129, 000327-000328, 000353.
[23] Exhibit C, Bates Nos. HAN 000048, 000272.
[24] Exhibit C, Bates Nos. HAN 000115, 000339.
[25] Exhibit C, Bates Nos. HAN 000120, 000344.

a.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)**   Products that are still in your physical possession; or

    **(2)**   Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)**   When all of the work called for in your contract has been completed;

        **(b)**   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site;

        **(c)**   When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

        The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b.   Does not include "bodily injury" or "property damage" arising out of:

    **(1)**   The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

    **(2)**   The existence of tools, uninstalled equipment or abandoned or unused materials."[26]

26.   The Policies define "property damage" to mean:

---

[26] Exhibit C, Bates Nos. HAN 000120, 000344.

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.[27]

27.    The policies define "your product" as follows:

**a.**    Means:

    **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)**    You;

        **(b)**    Others trading under your name; or

        **(c)**    A person or organization whose business or assets you have acquired; and

    **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**    Includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)**    The providing of or failure to provide warnings or instructions.

**c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.[28]

28.    The Policies additionally define "your work" as follows:

    a.    Means:
(1) Work or operations performed by you or on your behalf; and
(2) Materials, parts or equipment furnished in connection with such work or operations.

    b.    Includes:

[27] Exhibit C, Bates Nos. HAN 000120, 000344.
[28] Exhibit C, Bates Nos. HAN 000121, 000345.

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.[29]

29. The Policies' Section II – Liability Coverages Business Liability provide in pertinent part:

This insurance does not apply to:

**j.      Professional Services**

"Bodily injury", "property damage", "personal and advertising injury" caused by the rendering of or failure to render any professional service, advice or instruction:

**(1)**      By you;

**(2)**      On your behalf; or

**(3)**      From whom any of you assumed liability by reason of a contract or agreement, regardless of whether any such service, advice or instruction is ordinary to any insured's profession.

Professional services include but are not limited to:

*  *  *  *  *

**(5)**      Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications;

**(6)**      Supervisory, inspection or engineering services;

*  *  *  *  *

This exclusion applies even if a claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

**k.      Damage to Property**

"Property damage" to:

---

[29] Exhibit C, Bates Nos. HAN 000121, 000345.

* * * * *

**(5)**     That particular part of real property on which you or any contractor subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations;

**(6)**     That particular part of any property that must restored, repaired or replaced because "your work" was incorrectly performed on it.

* * * * *

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**l.**     **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m.**     **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n.**     **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.[30]

---

[30] Exhibit C, Bates Nos. HAN 000109-000111, 000333-000335.

## COUNT I:
## DECLARATORY RELIEF – NO COVERAGE AND
## NO DUTY TO DEFEND OR INDEMNIFY
### (Damage to Property Exclusion)

30.     Hanover adopts and incorporates by reference the allegations set forth in the preceding paragraphs as though completely and fully set forth herein.

31.     An actual, present and existing controversy exists between the parties to this lawsuit.  Hanover is currently defending Jenkins against the Forlanders' claims in the Underlying Lawsuit pursuant to a complete reservation of rights.[31]  Hanover maintains that, because there is no coverage under the Policies afforded to Jenkins for the claims asserted by the Forlanders in the Underlying Lawsuit, it has no duty to continue defending Jenkins against the Forlanders' claims, and it further has no duty to indemnify Jenkins for any judgment that may be rendered against them or any settlement reached in connection with the Underlying Lawsuit.

32.     The Policies require Hanover to provide defense and indemnity only for claims "to which this insurance applies."

33.     Particularly, based on the four corners of the Forlanders' Petition and the four corners of the Policy, the Damage to Property Exclusion unambiguously bars coverage for the Forlanders' claims against Jenkins.

34.     In Paragraph 12 of the Forlanders' Petition, they allege that "what work Jenkins did perform was improper and/or deficient," citing a litany of defects in Jenkins' own work, which, as alleged in Paragraph 13, caused them to hire a replacement contractor to "correct and complete" the work performed by Jenkins.[32]  These allegations relate only to defects in the work as-installed by Jenkins at the time of installation.  The Forlanders' Petition makes no allegations

---

[31] Exhibit F, Reservation of Rights letter.
[32] Exhibit D, Forlanders' Petition for Damages.

concerning physical property damage to anything other than Jenkins' own improper and/or deficient work at the time of Jenkins' installation.

35.     Any doubt that the Forlanders' allegations of physical property damage are limited only to Jenkins' own work and sustained at the time of installation was resolved upon receipt of the Forlanders' Answers to Interrogatories and the Forlanders' production of the report of Marc LeBlanc, licensed home inspector, in the Underlying Lawsuit.[33] As such, if any duty to defend Jenkins from the Forlanders' claims ever existed, which Hanover expressly denies, such duty terminated upon the clarification of the Forlanders' claims in their December 22, 2020, discovery responses. *Allstate Ins. Co. v. Roy*, 94-1072 (La. App. 1 Cir. 4/7/95), 653 So. 2d 1327, 1333, *writ denied,* 95-1121 (La. 6/16/95), 655 So. 2d 339, and *writ not considered,* 95-1215 (La. 6/16/95), 655 So. 2d 339 ("Accordingly, we find that the duty [the CGL carrier] owed to [the named insured] to defend him in the lawsuit . . .  terminated once [the named insured] established through his deposition testimony the undisputed facts as to the date of installation and the date of the fire," which negated the possibility of coverage.)

36.     Accepting the Forlanders' allegations as true, coverage is unambiguously excluded by the Damage to Property Exclusion, which precludes coverage for physical property damage to the insured's own work at the time of installation.

37.     As such, Hanover has no duty to defend, provide coverage for any damages that may be awarded in favor of the Forlanders, and no duty to indemnify Jenkins for any judgment that may be rendered against them or any settlement reached in connection with the Underlying Lawsuit.

---

[33] Exhibit B, the Forlanders' Answers to Interrogatories, dated December 22, 2020 (*see,* specifically, the Forlanders' Answers to Interrogatory Nos. 2, 3, 12, and 13); Exhibit I, report of Marc LeBlanc produced by the Forlanders.

## COUNT II:
## ADDITIONAL/ALTERNATIVE DECLARATORY RELIEF—
## NO COVERAGE AND NO DUTY TO DEFEND OR INDEMNIFY
## (Damage to Impaired Property or Property Not Physically Injured Exclusion)

38.     Hanover adopts and incorporates by reference the allegations set forth in the preceding paragraphs as though completely and fully set forth herein.

39.     An actual, present and existing controversy exists between the parties to this lawsuit. Hanover is currently defending Jenkins against the Forlanders' claims in the Underlying Lawsuit pursuant to a complete reservation of rights.[34] Hanover maintains that, because there is no coverage under the Policies afforded to Jenkins for the claims asserted by the Forlanders in the Underlying Lawsuit, it has no duty to continue defending Jenkins against the Forlanders' claims, and it further has no duty to indemnify Jenkins for any judgment that may be rendered against them or any settlement reached in connection with the Underlying Lawsuit.

40.     The Policies require Hanover to provide defense and indemnity only for claims "to which this insurance applies."

41.     Particularly, based on the four corners of the Forlanders' Petition and the four corners of the Policy, the Damage to Impaired Property or Property Not Physically Injured exclusion unambiguously bars coverage for the Forlanders' claims against Jenkins.

42.     The Damage to Impaired Property or Property Not Physically Injured exclusion unambiguously bars coverage for the Forlanders' claims that Jenkins's work and/or product was defective, deficient, inadequate, or dangerous, as well as for the Forlanders' claims for delay, loss of use, and failure by Jenkins, or anyone acting on Jenkins' behalf, to perform the contract Jenkins entered with the Forlanders in accordance with its terms.

---

[34] Exhibit F, Reservation of Rights letter.

43.     Paragraphs 10 and 13 of the Forlanders' Petition assert that "the delays caused by the defendants" resulted in increased costs and the "los[s] [of] enjoyment of their backyard." Furthermore, in Paragraph 12 of the Forlanders' Petition, the Forlanders' allege that "what work Jenkins did perform was improper and/or deficient," citing a litany of alleged defects in Jenkins' own work, which, as they alleged in Paragraph 13, caused them to hire a replacement contractor to "correct and complete" the work performed by Jenkins.[35]  These allegations relate <u>only</u> to defects in the work as-installed by Jenkins at the time of installation and not to any defects once the product had been put to its intended use. The Forlanders' Petition makes no allegations whatsoever concerning any sudden and accidental physical property damage to Jenkins' work after it had been put to its intended use.

44.     Any doubt that the Forlanders' allegations of physical property damage, delay, and loss of use are limited only to Jenkins' own work and sustained at the time of installation, and do not include any allegations of post-installation sudden and accidental physical injury, was resolved upon receipt of the Forlanders' Answers to Interrogatories and production of the report of Marc LeBlanc, licensed home inspector, in the Underlying Lawsuit.[36] As such, if any duty to defend Jenkins from the Forlanders' claims ever existed, which Hanover expressly denies, such duty terminated upon the clarification of the Forlanders' claims in their December 22, 2020, discovery responses. *Allstate Ins. Co. v. Roy*, 94-1072 (La. App. 1 Cir. 4/7/95), 653 So. 2d 1327, 1333, *writ denied,* 95-1121 (La. 6/16/95), 655 So. 2d 339, and *writ not considered,* 95-1215 (La. 6/16/95), 655 So. 2d 339 ("Accordingly, we find that the duty [the CGL carrier] owed to [the named insured] to defend him in the lawsuit . . .  terminated once [the named insured] established

---

[35] Exhibit D, Petition for Damages.
[36] Exhibit B, the Forlanders' Answers to Interrogatories, dated December 22, 2020 (*see,* specifically, the Forlanders' Answers to Interrogatory Nos. 2, 3, 12, and 13); Exhibit I, report of Marc LeBlanc produced by the Forlanders.

through his deposition testimony the undisputed facts as to the date of installation and the date of the fire," which negated the possibility of coverage.)

45.     Accepting the Forlanders' allegations as true, coverage is unambiguously excluded by the Damage to Impaired Property or Property Not Physically Injured exclusion, which precludes coverage for physical property damage to the insured's own work at the time of installation.

46.     As such, Hanover has no duty to defend, provide coverage for any damages that may be awarded in favor of the Forlanders, and no duty to indemnify Jenkins for any judgment that may be rendered against them or any settlement reached in connection with the Underlying Lawsuit.

**COUNT III:**
**ADDITIONAL/ALTERNATIVE DECLARATORY RELIEF—**
**NO COVERAGE AND NO DUTY TO DEFEND OR INDEMNIFY**
**("Your Work" and "Your Product" Exclusions)**

47.     Hanover adopts and incorporates by reference the allegations set forth in the preceding paragraphs as though completely and fully set forth herein.

48.     An actual, present and existing controversy exists between the parties to this lawsuit.  Hanover is currently defending Jenkins against the Forlanders' claims in the Underlying Lawsuit pursuant to a complete reservation of rights.[37]  Hanover maintains that, because there is no coverage under the Policies afforded to Jenkins for the claims asserted by the Forlanders in the Underlying Lawsuit, it has no duty to continue defending Jenkins against the Forlanders' claims, and it further has no duty to indemnify Jenkins for any judgment that may be rendered against them or any settlement reached in connection with the Underlying Lawsuit.

---

[37] Exhibit F, Reservation of Rights letter.

49.     The Policies require Hanover to provide defense and indemnity only for claims "to which this insurance applies."

50.     Particularly, based on the four corners of the Forlanders' Petition and the four corners of the Policy, the "Your Work" and "Your Product" exclusions unambiguously bar coverage for the Forlanders' claims against Jenkins.

51.     The "Your Work" and "Your Product" exclusions unambiguously bar coverage for the Forlanders' claims that Jenkins's own work and/or product was defective, deficient, inadequate, or dangerous, and/or the result of faulty workmanship.

52.     In Paragraph 12 of the Forlanders' Petition, they allege that "what work Jenkins did perform was improper and/or deficient," citing a litany of defects in Jenkins' own work, which, as they alleged in Paragraph 13, caused them to hire a replacement contractor to "correct and complete" the work performed by Jenkins.[38]  Paragraph 18 alleges that the property damage claims are a direct result of Jenkins' failure "to perform the work in a workmanlike manner."[39] The Forlanders' Petition makes no allegations concerning resultant damage to physical property other than Jenkins' own improper and/or deficient work at the time of Jenkins' installation.

53.     Any doubt that the Forlanders' allegations of physical property damage, delay, and loss of use are limited only to Jenkins' own work was resolved upon receipt of the Forlanders' Answers to Interrogatories and the Forlanders' production of the report of Marc LeBlanc, licensed home inspector, in the Underlying Lawsuit.[40]  As such, if any duty to defend Jenkins from the Forlanders' claims ever existed, which Hanover expressly denies, such duty terminated upon the clarification of the Forlanders' claims in their December 22, 2020, discovery responses.  *Allstate*

---

[38] Exhibit D, Petition for Damages.
[39] *Id.*
[40] Exhibit B, the Forlanders' Answers to Interrogatories, dated December 22, 2020 (*see,* specifically, the Forlanders' Answers to Interrogatory Nos. 2, 3, 12, and 13); Exhibit I, report of Marc LeBlanc produced by the Forlanders.

*Ins. Co. v. Roy*, 94-1072 (La. App. 1 Cir. 4/7/95), 653 So. 2d 1327, 1333, *writ denied,* 95-1121

(La. 6/16/95), 655 So. 2d 339, and *writ not considered,* 95-1215 (La. 6/16/95), 655 So. 2d 339

("Accordingly, we find that the duty [the CGL carrier] owed to [the named insured] to defend him

in the lawsuit . . . terminated once [the named insured] established through his deposition

testimony the undisputed facts as to the date of installation and the date of the fire," which negated

the possibility of coverage.)

54.     Accepting the Forlanders' allegations as true, coverage is unambiguously

excluded by the "Your Work" and "Your Product" exclusions, which preclude coverage for

physical property damage to the insured's own work.

55.     As such, Hanover has no duty to defend, provide coverage for any damages that

may be awarded in favor of the Forlanders, and no duty to indemnify Jenkins for any judgment

that may be rendered against them or any settlement reached in connection with the Underlying

Lawsuit.

**COUNT IV:**
**ADDITIONAL DECLARATORY RELIEF-- NO COVERAGE AND**
**NO DUTY TO DEFEND OR INDEMNIFY**
**(Professional Services Exclusion)**

56.     Hanover adopts and incorporates by reference the allegations set forth in the

preceding paragraphs as though completely and fully set forth herein.

57.     An actual, present and existing controversy exists between the parties to this

lawsuit. Hanover is currently defending Jenkins against the Forlanders' claims in the Underlying

Lawsuit pursuant to a complete reservation of rights.[41]  Hanover maintains that, because there is

no coverage under the Policies afforded to Jenkins for the claims asserted by the Forlanders in the

Underlying Lawsuit, it has no duty to continue defending Jenkins against the Forlanders' claims,

---

[41] Exhibit F, Reservation of Rights letter.

and it further has no duty to indemnify Jenkins for any judgment that may be rendered against them or any settlement reached in connection with the Underlying Lawsuit.

58.     The Policies require Hanover to provide defense and indemnity only for claims "to which this insurance applies."

59.     Particularly, based on the four corners of the Forlanders' Petition and the four corners of the Policy, the Professional Services exclusion unambiguously bars coverage for the Forlanders' claims that Jenkins' landscape architectural design was substandard.

60.     In Paragraph 4 of the Forlanders' Petition, they allege that "they contracted Jenkins to design an outdoor kitchen, gazebo, pool, entertainment area, and related infrastructure and landscaping in the backyard of their home," and that they "paid Jenkins $6,750 for the design."  Additionally, in Paragraph 12 of the Forlanders' Petition, they allege that "[e]lectrical, plumbing, and gas lines in the outdoor kitchen were not installed to align with appliances," "the electrical conduit for the landscaping had to be removed and replaced," "the wood arbor was installed . . . in the incorrect dimensions," and that "Jenkins failed to comply with applicable building codes."  To the extent that these issues resulted from Jenkins' improper landscape architectural design, they are unambiguously excluded by the Policies' Professional Services exclusion.

61.     Any doubt as to whether there was an issue of improper design was resolved in Jenkins' Answers to Interrogatories, Exhibit B. Specifically, in Answer to Interrogatory No. 14, Jenkins stated that "plaintiffs . . .  encountered issues with the location and design of the outdoor kitchen, as well as the appliances and/or equipment for the outdoor kitchen."  Additionally, Jenkins' Requests for Admission No. 6 to the Forlanders suggested that "the outdoor kitchen was to be built on an existing servitude."  Exhibit H.  Furthermore, the Forlanders' Expert, Marc

LeBlanc, indicated in the report produced with Plaintiff's discovery responses that, "[t]here are several areas in the back yard that are completely surrounded by concrete," a "[r]ainwater drain opening . . .  is missing," and the "unfinished electrical conduits rising from the earth below the two main circuit breaker enclosures do not, and cannot, physically connect to those enclosures because of intervening existing conduits."  Exhibit I.  To the extent that the issues resulted from improper landscape architectural design and planning, they are unambiguously excluded by the Policies' Professional Services exclusion, and therefore, Hanover owes no duty to defend Jenkins for same. *Allstate Ins. Co. v. Roy*, 94-1072 (La. App. 1 Cir. 4/7/95), 653 So. 2d 1327, 1333, *writ denied,* 95-1121 (La. 6/16/95), 655 So. 2d 339, and *writ not considered,* 95-1215 (La. 6/16/95), 655 So. 2d 339 ("Accordingly, we find that the duty [the CGL carrier] owed to [the named insured] to defend him in the lawsuit . . .  terminated once [the named insured] established through his deposition testimony the undisputed facts as to the date of installation and the date of the fire," which negated the possibility of coverage.)

62.     For the same reasons that it has no duty to defend Jenkins for these allegations, Hanover also has not duty to provide coverage for any damages relating to Jenkins' improper landscape architectural design and planning that may be awarded in favor of the Forlanders, and no duty to indemnify Jenkins for any judgment that may be rendered against them or any settlement reached in connection with the claims for improper landscape architectural design and planning in the Underlying Lawsuit.

63.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, Hanover seeks a judicial declaration of its rights and obligations under the Policy with respect to the claims asserted by William Thomas Forlander and Jo Ann Forlander against Eduardo Jenkins Landscape

& Planner, LLC and Eduardo Jenkins. The Court's declaration(s) will confer certainty on the parties and will serve the interests of justice.

**WHEREFORE**, Hanover respectfully requests that this Honorable Court enter a judgment declaring the rights and obligations of the parties under the Policies, including, but not limited to, the following:

(a)     A declaration that the Policy does not afford insurance coverage for any of the claims that William Thomas Forlander and Jo Ann Forlander assert against Eduardo Jenkins Landscape & Planner, LLC and Eduardo Jenkins arising out of the Backyard Project;  and

(b)     A declaration that Hanover does not have a duty to indemnify or defend Eduardo Jenkins Landscape & Planner, LLC and Eduardo Jenkins in connection with any claim or lawsuit brought by William Thomas Forlander and Jo Ann Forlander arising out of the Backyard Project.

Respectfully Submitted:


*/s/ Kristopher T. Wilson*
**Kristopher T. Wilson, Bar #23978 (T.A.)**
**Abigail F. Gerrity, Bar #35777**
**Lugenbuhl, Wheaton, Peck, Rankin & Hubbard**
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: 504-568-1990/Facsimile: 504-310-9195
Email: kwilson@lawla.com
        agerrity@lawla.com
**Attorneys for The Hanover American Insurance Company**


## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of June, 2021, a copy of this pleading has been served upon all counsel to this action by facsimile or by depositing same in the United States mail, properly addressed and first class postage prepaid.


*/s/ Kristopher T. Wilson*